## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ROBIN ARIEL MIRANDA,** 701 Vallance Way NE, St. Petersburg, FL 33716, individually, <br><br> **MARY JEANNE MAUNEY,** 155 Broken Arrow Trail, Youngsville, NC 27596, individually, and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> **HOMEFIX CUSTOM REMODELING CORP.**, 9115 Whiskey Bottom Road, Suite H, Laurel, MD 20723, a Maryland company, <br><br> *Defendant.* | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Robin Ariel Miranda ("Miranda" or "Plaintiff Miranda") and Plaintiff Mary Jeanne Mauney ("Mauney" or "Plaintiff Mauney") bring this Class Action Complaint and Demand for Jury Trial against Defendant Homefix Custom Remodeling Corp. ("Defendant" or "Homefix"), to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") and the Florida Telephone Solicitation Act ("FTSA") by making unsolicited calls to consumers to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC") and consumers who have instructed Defendant to stop calling, and by using pre-recorded voice messages to make telemarketing calls without prior consent, and to otherwise obtain injunctive and monetary relief for all persons injured by Defendant's actions. Plaintiffs alleges as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1.      Plaintiff Miranda is a Saint Petersburg, Florida resident.

2.      Plaintiff Mauney is a Youngsville, North Carolina resident.

3.      Defendant Homefix is a Maryland corporation headquartered in Laurel, Maryland. Homefix conducts business throughout this District, and the United States.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court has supplemental jurisdiction over the FTSA claims because they arise from the same telemarketing campaign.

5.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and the wrongful conduct leading to this case was directed by Defendant to the Plaintiffs from this District.

## INTRODUCTION

6.      As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant Mauneyage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Mauney v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8.      A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

9.      When Congress enacted the TCPA in 1991, it found Americans were receiving more than 18 million calls every day. 105 Stat. 2394 at § 2(3).

10.     By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million calls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13.     According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in June 2022 alone, at a rate of 144.5 million calls per day. www.robocallindex.com. (Last checked September 12, 2022).

14.     The FCC also has received an increasing number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

17.     Defendant Homefix is a home improvement service provider conducting business in multiple states throughout the U.S.[3]

18.     Defendant Homefix makes telemarketing calls to consumers to solicit its home improvement services.  The purpose of the telemarketing calls is to to schedule home visits for their employees to visit consumers' homes to solicit Defendant's services.

19.     Defendant Homefix hires employees to cold call consumers and provides them with consumer leads to place calls in order to set appointments for home visits to solicit their home improvement services to consumers.

**We offer:**

- A Real Training Program!
- Real Compensation plans!
- Easily obtainable monthly bonuses!
- Best of all, we provide high quality leads! [4]

20.     Defendant Homefix makes telemarketing calls to residential telephone consumers including consumers whose phone numbers are registered on the Do Not Call registry, who have never provided their phone number to Defendant, and who never consented to receive phone calls from the Defendant.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/network-capital-funding-corporation/about/
[4] https://www.ziprecruiter.com/c/HOMEFIX-CUSTOM-REMODELING/Job/Entry-Level-Sales/-in-Charlotte,NC?jid=59e9ccc36e9888c4&lvk=lif5GRotP_WhpQbrxDAb2A.--McUxoC8uV

21.     Defendant Homefix also uses the alias US Home Improvement to run its telemarketing campaigns.

22.     Plaintiff Miranda and Plaintiff Mauney received multiple calls from Defendant despite never having given their phone numbers to Defendant and despite having their phone numbers registered on the DNC to prevent such cold calls.

23.     Defendant also uses pre-recorded voice messages to place these solicitation calls, as in the case of Plaintiff Miranda.

24.     Several Homefix employees have posted their experiences of Homefix directing them to make cold calls. For instance:

**I made 200 to 300.phone calls every day .**

Telemarketer ,independent contractor (Former Employee) - Was on Bosley Ave. When I started then they moved to York Rd. - February 24, 2020

I was working very hard by cold calling people in hopes of installing roofs , windows, and siding. I was very respectful to the people I called if they did not hang up. I was leading all of the telemarkers and canvassers while I was working there. I enjoy interacting with people and helping them feel better about their home.

- [5]

**Great Environment**

Marketing Director (Former Employee) - Vienna, VA - March 28, 2019

Typically when I was out in the field, I would have 2-3 appointments per day. When I was in the office, I would make upwards to 300-400 calls a day to bring in more business for the company. I learned how to speak to people in making them feel comfortable in their decisions. The hardest part about the job was the training classes they put you through. The most enjoyable part of the job was getting paid every week and being able to work in the office or in the field whenever I wanted to.

- [6]

---

[5] https://www.indeed.com/cmp/Homefix-Custom-Remodeling/reviews?fcountry=ALL&start=20
[6] https://www.indeed.com/cmp/Homefix-Custom-Remodeling/reviews?fcountry=ALL&start=40



25.     Many consumers have posted complaints online regarding unsolicited telemarketing calls that they received from Defendant Homefix, including complaints from consumers whose phone numbers were listed on the National Do Not Call Registry and consumers who received unsolicited calls even after instructing Defendant to stop calling, for instance:



- "Last year i was getting 4 calls a week from fake numbers asking what project I'm next doing in my house. After a few months I set up an appointment just to find out what rat

---

[7] https://www.indeed.com/cmp/Homefix-Custom-Remodeling/reviews?fcountry=US&floc=Baltimore%2C+MD&fjobtitle=Telemarketer
[8] https://www.glassdoor.com/Reviews/Homefix-Custom-Remodeling-Reviews-E375203.htm?filter.iso3Language=eng
[9] https://www.bbb.org/us/md/columbia/profile/construction-services/homefix-custom-remodeling-0011-20000768/customer-reviews

shit hole company hires Indian callers to harass homeowners, It is this company. The in person sales pitch was a bit cocky. The estimate was only verbal there was no write up. It was one of those decide now for a 35% discount or else. I said after 30-40 minutes I'd never hire a company that does that shady marketing. He said those guys are amazing and they keep him very busy. And said to tell them I'm renting and they will stop calling.  I recorded the meeting." [10]

- "Robo call do not answer" [11]

- "Unsolicited call"[12]

- "calls too many times"[13]

- "Terrible sales rep. called me with a bunch of false information. and then hung up on my said best of luck. stay far away...
  If that was just the first interaction, I'd be scared to find out what happens after you already paid them..."[14]

- "Keeps calling me every day despite the fact I don't need work done. If their work is as bad as their marketing you'd be better off setting your house on fire than going with Homefix."[15]

- "I'm on the DO NOT CALL LIST and they called trying to sell me something while I was at work. Very annoying. Not even sure how they got my number."[16]

## PLAINTIFF MIRANDA'S ALLEGATIONS

26.      Plaintiff Miranda's cell phone number ending xxx-xxx-6439 has been registered on the DNC since August 30, 2014.

27.      Plaintiff Miranda's cell phone number begins with a 954 Florida area code.

28.      Plaintiff Miranda uses his cell phone number for personal and residential purposes only.

---

[10] https://www.yelp.com/biz/homefix-custom-remodeling-vienna-3
[11] https://www.shouldianswer.com/phone-number/7034245218
[12] *Id.*
[13] https://www.shouldianswer.com/phone-number/4104011298
[14] https://www.google.com/search?q=Homefix+Custom+Remodeling+Vienna
[15] *Id.*
[16] *Id.*

29.     On June 5 or 6, 2022, a salesman knocked on Plaintiff's door and induced him to book an appointment for a home improvement consultation from Defendant Homefix. Plaintiff provided his phone number to the salesperson, but he did not fill out or sign any document.

30.     On June 6, 2022, Plaintiff Miranda called Defendant Homefix and cancelled the appointment, stating that he was not interested in getting a quote on windows. After this instance, Plaintiff Miranda started receiving a series of solicitation calls to his cell phone from Defendant Homefix.

31.     Plaintiff Miranda answered several of Defendant's calls, and clearly requested Defendant Homefix to remove Plaintiff's phone number from their calling list. But despite making stop requests on multiple occasions, Plaintiff Miranda continued to receive solicitation calls from Defendant Homefix.

32.     Plaintiff Miranda has never conducted any business with Defendant Homefix, nor has he given his consent to receive telemarketing calls from or on behalf of Defendant Homefix.

33.     Defendant Homefix used spoofed phone numbers to call Plaintiff's cell phone. Plaintiff tried calling back some of the phone numbers to request Defendant to stop calling his cell phone, and found that the phone numbers that called him were not capable of receiving calls.

34.     Plaintiff Miranda received several calls on his cell phone from Defendant Homefix from the phone number 863-213-0483, which Plaintiff did not answer but which include:

- On June 14, 2022, at 12:28 PM,

- On June 15, 2022, at 11:59 AM,

- On June 16, 2022, at 1:16 AM, and

- On June 18, 2022, at 11:17 AM.

35.     On June 17, 2022, at 11:40 AM, Plaintiff Miranda received a call from the phone number 863-213-0483 to his cell phone. Plaintiff answered the call and spoke to Defendant Homefix's employee and requested them to remove his phone number from their calling list.

36.     On June 20, 2022, at 4:55 PM, Plaintiff Miranda received another call from Defendant Homefix using the same phone number 863-213-0483. Plaintiff did not answer this call and received a pre-recorded voicemail from Defendant's employee Sherry:

> "Good afternoon. Sherry here at Homefix Custom Remodeling. I'm reaching out to get you scheduled for your free estimate on your window replacements. Give me a call back. My name again is Sherry at 863-213-0483. I'd love to be able to give away this free windows replacement estimate to you. It is of no obligation to you and is good for 12 full months. Can you imagine that? 12 full months to have a budgeting tool and something to save for. Give me a call again at 863-213-0483 to get scheduled as well as talk about discounts that I can get for you. Again call Sherry at Homefix Custom Remodeling. Have a great day now. Bye."

37.     On calling this phone number 863-213-0483, it is answered by Defendant Homefix's employees.

38.     Plaintiff Miranda never consented to receiving solicitation calls from Defendant Homefix and does not have any existing business relationship with the Defendant.

39.     The unauthorized telephone calls placed by Defendant, as alleged herein, have harmed Plaintiff Miranda in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

## PLAINTIFF MAUNEY'S ALLEGATIONS

40.     Plaintiff Mauney's cell phone number ending xxx-xxx-8634 has been registered on the DNC since August 1, 2011.

41.     Plaintiff Mauney uses her cell phone number for personal and residential purposes only.

42. Plaintiff Mauney has never conducted any business with Defendant Homefix, nor has she given her consent to receive telemarketing calls from or on behalf of Defendant Homefix.

43. Near the end of July, someone knocked on Plaintiff Mauney's door offering quotes to purchase new windows. Plaintiff Mauney told the employee that she was not interested and to take her off of whatever list he was working from. The employee argued that the client needs new windows.

44. After this visit, Plaintiff Mauney started receiving a series of unsolicited calls to her cell phone number from local and foreign callers regarding a quote for windows. The callers identified as US Home Improvement, which is an alias used by Defendant Homefix to place telemarketing calls.

45. On August 9, 2022, at 12:32 PM, Plaintiff Mauney received a call from Defendant Homefix to her cell phone from the phone number 919-881-5789. Plaintiff answered this call and a foreign caller identified as US Home Improvement, an alias used by Defendant Homefix. Plaintiff Mauney informed Defendant that she was on the Do Not Call list and asked Defendant to take her phone number off their calling list.

46. On August 9, 2022, despite making a stop request to Defendant Homefix, Plaintiff Mauney received multiple calls from Defendant, including:

- On 2:29 PM using the phone number 919-847-8227,

- On 2:52 PM using the phone number 919-824-5276, and

- On 3:38 PM using the phone number 919-813-3584.

47. On August 10, 2022, Plaintiff Mauney received more solicitation calls from Defendant Homefix using the alias US Home Improvement, including:

- On 10:39 AM using the phone number 919-856-9083,

- On 10:43 AM using the phone number 919-881-3959,

- On 11:16 AM using the phone number 919-826-6573, and

- On 4:10 PM using the phone number 919-885-1214.

48.     On August 13, 2022, Plaintiff Mauney received another call from Defendant Homefix using phone numbers 919-869-9140. Plaintiff answered the call and the caller again identified as US Home Improvement. Plaintiff asked the caller for their company's location and the caller said they could not provide it.

49.     On August 16, 2022, Plaintiff Mauney received another call from Defendant Homefix. Plaintiff answered the call and spoke to Defendant's employee who identified the company as Defendant Homefix's alias, US Home Improvement and informed Plaintiff that their company was located in North Carolina. Plaintiff pressed the caller for more information about the company and the caller hung up.

50.     On August 17, 2022, Plaintiff Mauney received another call to her cell phone from Defendant Homefix using the phone number 919-824-6344. Plaintiff answered the call and spoke to another foreign caller who initially said he is with US Home Improvement. Plaintiff Mauney played along and the caller admitted that the company is Homefix when trying to establish a time and date for a free quote consultation. The client hung up before confirming.

51.     Right after the previous call ended, the same caller called back on Plaintiff Mauney's cell phone this time using the phone number 919-821-0575. The caller started by saying he is with Homefix. Plaintiff Mauney asked why the caller was using a different company name this time. The caller said that they are really Homefix and that they use the other company name, US Home Improvement, because it is easier. The agent then went on to ask when he could have employees come over and give a free consultation quote.

52.     Plaintiff asked where the company was located and Defendant's employee confirmed that they are located in Charlotte, Raleigh and other locations and have been in business for 31 years. Defendant's employee then asked when they could book the appointment.

53.     Plaintiff Mauney told Defendant's employee that she has asked many times for the calls to stop and that her phone number was on the Do Not Call Registry. Defendant's employee did not acknowledge Plaintiff's stop request and hung up.

54.     Plaintiff Mauney never consented to receiving solicitation calls from Defendant Homefix and does not have any existing business relationship with the Defendant.

55.     The unauthorized telephone calls placed by Defendant, as alleged herein, have harmed Plaintiff Mauney in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

56.     Seeking redress for these injuries, Plaintiff Miranda and Plaintiff Mauney, on behalf of themselves and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059, et seq.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**TCPA Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of Defendant, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff Miranda or Plaintiff Mauney.

**TCPA Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf

of the Defendant, called more than one time, (2) within any 12-month period, (3) for substantially the same reason that Defendant called Plaintiff Miranda or Plaintiff Mauney, (4) including at least once after the person requested that Defendant or its agent to stop.

**TCPA Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant, or an agent calling on behalf of the Defendant, called on their cellular telephone number (2) using the same or a substantially similar artificial or pre-recorded voice message used to call Plaintiff Miranda.

**FTSA Pre-recorded No Consent Class:** All persons in Florida, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendant's goods and/or services, (2) using the same or a substantially similar artificial or pre-recorded voice message used to call Plaintiff Miranda.

**FTSA Spoofed Number Class:** All persons in Florida, who (1) received an unwanted telephonic sales call from or on behalf of the Defendant, (2) using a phone number which the recipients of the call were unable to call back, or (3) on calling those number back, the recipients were unable to reach the Defendant or their agents.

58.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the Class definitions following appropriate discovery.

59.     **Typicality and Numerosity**: Plaintiff Miranda and Mauney are members of the TCPA Do Not Call Registry Class and TCPA Internal Do Not Call Class. Plaintiff Miranda is a member of the TCPA Pre-recorded No Consent Class and all the Florida Classes, and on information and belief, there are hundreds, if not thousands of members of the Classes, all of which received calls from Defendant as part of a single telemarketing campaign, and joinder of all members is impracticable.

60.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendant or an agent calling on behalf of Defendant placed multiple calls within a 12-month period to Plaintiffs and other consumers whose telephone numbers were registered with the National DNC for at least 30 days at the time of each call;

(b)     whether Defendant or an agent calling on behalf of Defendant placed calls to Plaintiffs and other members of the TCPA Internal Do Not Call Class including at least 1 call after the person requested Defendant or their agent to stop calling their phone;

(c)     whether Defendant used a pre-recorded voice message to call Plaintiff Miranda and members of the TCPA Pre-recorded No Consent Class and the FTSA Pre-recorded No Consent Class;

(d)     whether Defendant used spoofed phone numbers to call Plaintiff Miranda and other members of the FTSA Spoofed Number Class;

(e)     whether Defendant made telemarketing calls without first obtaining prior express written consent;

(f)     whether the calls violated the TCPA and the FTSA;

(g)     whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

61.     **Adequate Representation**: Plaintiff Miranda and Plaintiff Mauney will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

62.     **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff Miranda or Plaintiff Mauney. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the TCPA Do Not Call Registry Class)**

63.     Plaintiff Miranda and Plaintiff Mauney repeat and reallege the prior paragraphs of this Complaint and incorporate them by reference herein.

64.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

65.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

66.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Miranda, Plaintiff Mauney and the TCPA Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

67.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the TCPA Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

68.     As a result of Defendant's conduct as alleged herein, Plaintiffs and the TCPA Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for each of such violations of 47 C.F.R. § 64.1200.

69.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the TCPA Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the TCPA Internal Do Not Call Class)**

70.     Plaintiff Miranda and Plaintiff Mauney repeat and reallege paragraphs 1 through 62 of this Complaint and incorporate them by reference herein.

71.     Plaintiffs brings this claim individually and on behalf of the TCPA Internal Do Not Call Class Members against Defendant.

72.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose

behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

73.     Defendant, or an agent calling on behalf of Defendant placed calls to Plaintiffs and members of the TCPA Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

74.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

75.     The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiffs and the other members of the TCPA Internal Do Not Call Class are each entitled to up to $1,500 per violation

### THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Miranda and the TCPA Pre-recorded No Consent Class)**

76.     Plaintiff Miranda repeats and realleges paragraphs 1 through 62 of this Complaint and incorporates them by reference herein.

77.     Plaintiff Miranda brings this claim individually and on behalf of the TCPA Pre-recorded No Consent Class Members against the Defendant.

78.     Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff Miranda and the other members of the TCPA Pre-recorded No Consent Class using a pre-recorded voice message.

79.     These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Miranda and the other members of the TCPA Pre-recorded No Consent Class.

80.     The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Miranda and the other members of the TCPA Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### FOURTH CLAIM FOR RELIEF
**Florida Telephone Solicitation Act**
**(Violation of Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Miranda and the FTSA Pre-recorded No Consent Class)**

81.     Plaintiff Miranda repeats and realleges paragraphs 1 through 62 of this Complaint and incorporates them by reference herein.

82.     Plaintiff Miranda brings this claim individually and on behalf of the FTSA Pre-recorded No Consent Class Members against Defendant.

83.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

84.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

85.     Defendant failed to secure prior express written consent from Plaintiff Miranda and members of the FTSA Pre-recorded No Consent Class.

86.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff Miranda and the FTSA Pre-recorded No Consent Class members without Plaintiff Miranda's and the Class members' prior express written consent.

87.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff Miranda and the Class members to be made utilizing an automated system using a prerecorded message.

88.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Miranda and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

### FIFTH CLAIM FOR RELIEF
**Florida Telephone Solicitation Act**
**(Violation of Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Miranda and the FTSA Spoofed Number Class)**

89.     Plaintiff Miranda repeats and realleges paragraphs 1 through 62 of this Complaint and incorporates them by reference herein.

90.     Plaintiff Miranda brings this claim individually and on behalf of the FTSA Spoofed Number Class Members against Defendant.

91.     It is a violation of the FTSA "for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. However, it is not a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours. If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed on a device in or connected to the subscriber's telephone." *Fla. Stat. § 501.059(8)(b).*

92.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services,

soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." *Fla. Stat. § 501.059(1)(i)*.

93.     Defendant failed to ensure that the phone number which was displayed in the caller identification service for the telephonic sales calls made by them to the Plaintiff Miranda and other members of the Class were capable of receiving phone calls if the Plaintiff tried to call them back. Plaintiff Miranda was unable to connect with the Defendant upon calling the phone numbers which were displayed on their cell phone's caller identification system for the telephonic sales call received from Defendant.

94.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff Miranda and the FTSA Spoofed Number Class members using phone numbers which could not be called back, or spoofed phone numbers.

95.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Miranda and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff Miranda and the members of the FTSA Spoofed Number Class are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Miranda and Mauney individually and on behalf of the Classes, pray for the following relief:

a)  An order certifying this case as a class action on behalf of the Classes, as defined above; appointing Plaintiffs Miranda and Mauney as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and the FTSA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

<b>JURY DEMAND</b>

Plaintiffs Miranda and Mauney request a jury trial.

Respectfully Submitted,

**ROBIN ARIEL MIRANDA**, individually, **MARY JEANNE MAUNEY,** individually, and on behalf of those similarly situated individuals

DATED this 12th day of December, 2022.

By: /s/ John McGowan
Managing Member
Kinner & McGowan, PLLC
413 East Capitol St. SE
Washington, D.C. 20003
(202) 846-7148
jmcgowan@kinnermcgowan.com
kinnermcgowan.com

*Local Counsel for Plaintiffs and the putative Classes*

Avi R. Kaufman, Esq.*
**KAUFMAN P.A**
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
kaufman@kaufmanpa.com
(305) 469-5881

*Attorneys for Plaintiffs and the putative Classes*
*\* Pro hac vice forthcoming*