**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **ROBIN ARIEL MIRANDA, DOUGLAS DRIBBEN, MARY GONZALEZ and MARY JEANNE MAUNEY,** individually, and on behalf of all others similarly situated, | Case No. 22-cv-1143 **CONSOLIDATED CLASS ACTION COMPLAINT** |
| *Plaintiffs*, | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **HOMEFIX CUSTOM REMODELING CORP.**, a Maryland company, | |
| *Defendant*. | |

Plaintiffs Robin Ariel Miranda, Douglas Dribben, Mary Gonzalez and Mary Jeanne Mauney ("Plaintiffs") by their undersigned counsel, for this class action complaint against Homefix Custom Remodeling Corp., and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("HomeFix" or "Defendant"), alleges as follows:

## INTRODUCTION

1.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      The TCPA does not only restrict robocalls, however.

3.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . Private suits can seek either monetary or injunctive relief. *Id.* . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

4.      Ms. Miranda also alleges that Homefix's agent made automated sales calls using spoofed Caller IDs, both actions violate the Florida Telephone Solicitations Act, Fla. Sta § 501.059 ("FTSA").

5.      Ms. Mauney alleges Homefix contacted her multiple times in violation of the TCPA, including by contacting her despite her number being listed on the National Do Not Call Registry and her demands that the calls stop.

6.      Ms. Gonzalez also alleges that HomeFix's agent made unsolicited telemarketing calls to Virginia telephone numbers on the National Do Not Call Registry, and that by doing so, HomeFix has violated the provisions of the Virginia Telephone Privacy Protection Act, Va. Stat. § 59.1-510 *et seq.* ("VTPPA").

7.      Mr. Dribben alleges Homefix contacted him multiple times in violation of the TCPA, including by contacting him despite his number being listed on the National Do Not Call Registry and his demands that the calls stop.

8.      Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## PARTIES

9.      Plaintiff Miranda is a Florida resident.

10.     Plaintiff Mauney is a North Carolina resident.

11.     Plaintiff Dribben is a Maryland resident.

12.     Plaintiff Gonzalez is a Virginia resident.

13.     Defendant Homefix is a Maryland corporation headquartered in Laurel, Maryland. Homefix conducts business throughout this District, and the United States.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court has supplemental jurisdiction over the various state law claims because they arise from the same telemarketing campaign.

15.     This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and the wrongful conduct leading to this case was directed by Defendant to the Plaintiffs from this District.

## COMMON ALLEGATIONS

16.     Defendant Homefix is a home improvement service provider conducting business in multiple states throughout the U.S.[1]

17.     Defendant Homefix makes telemarketing calls to consumers to solicit its home improvement services.  The purpose of the telemarketing calls is to to schedule home visits for their employees to visit consumers' homes to solicit Defendant's services.

18.     Defendant Homefix hires employees to cold call consumers and provides them with consumer leads to place calls in order to set appointments for home visits to solicit their home improvement services to consumers.

**We offer:**

- A Real Training Program!
- Real Compensation plans!
- Easily obtainable monthly bonuses!
- Best of all, we provide high quality leads! [2]

19.     Defendant Homefix makes telemarketing calls to residential telephone consumers including consumers whose phone numbers are registered on the Do Not Call registry, who have never provided their phone number to Defendant, and who never consented to receive phone calls from the Defendant.

---

[1] https://www.linkedin.com/company/network-capital-funding-corporation/about/
[2] https://www.ziprecruiter.com/c/HOMEFIX-CUSTOM-REMODELING/Job/Entry-Level-Sales/-in-Charlotte,NC?jid=59e9ccc36e9888c4&lvk=lif5GRotP_WhpQbrxDAb2A.--McUxoC8uV

20.    Defendant Homefix also uses third parties to run its telemarketing campaigns.

21.    Defendant also uses pre-recorded voice messages to place these solicitation calls, as in the case of Plaintiff Miranda.

22.    Several Homefix employees have posted their experiences of Homefix directing them to make cold calls. For instance:

### I made 200 to 300.phone calls every day .

Telemarketer ,independent contractor (Former Employee) - Was on Bosley Ave. When I started then they moved to York Rd. - February 24, 2020

I was working very hard by cold calling people in hopes of installing roofs , windows, and siding. I was very respectful to the people I called if they did not hang up. I was leading all of the telemarkers and canvassers while I was working there. I enjoy interacting with people and helping them feel better about their home.    3

### Great Environment

Marketing Director (Former Employee) - Vienna, VA - March 28, 2019

Typically when I was out in the field, I would have 2-3 appointments per day. When I was in the office, I would make upwards to 300-400 calls a day to bring in more business for the company. I learned how to speak to people in making them feel comfortable in their decisions. The hardest part about the job was the training classes they put you through. The most enjoyable part of the job was getting paid every week and being able to work in the office or in the field whenever I wanted to.    4

### Very Laid Back

Telemarketer (Former Employee) - Baltimore, MD - November 8, 2021

It was very laid back and not a difficult environment to be in (I honestly miss it) with many different people from different walks of life and the task was simple and straight forward. The hardest part of the job is not getting hung up on lol    5

---

3 https://www.indeed.com/cmp/Homefix-Custom-Remodeling/reviews?fcountry=ALL&start=20
4 https://www.indeed.com/cmp/Homefix-Custom-Remodeling/reviews?fcountry=ALL&start=40
5 https://www.indeed.com/cmp/Homefix-Custom-Remodeling/reviews?fcountry=US&floc=Baltimore%2C+MD&fjobtitle=Telemarketer



**Not the job for you**

Feb 23, 2022 - in Columbia, MD

◯ Recommend    — CEO Approval    ✓ Business Outlook

**Pros**

Free food while in training.

**Cons**

4 days in you are running non confirmed leads. HCR claims all leads are qualified. This is not the truth. No demo kits, no literature. We had 20 minutes of in home finance training. 20 minutes to learn contracts.                    [6]

23.    Many consumers have posted complaints online regarding unsolicited telemarketing calls that they received from Defendant Homefix, including complaints from consumers whose phone numbers were listed on the National Do Not Call Registry and consumers who received unsolicited calls even after instructing Defendant to stop calling, for instance:

Sandra J

⭐☆☆☆☆                                    07/21/2022

I have asked this company for over 2 years to stop calling me! I am on the do not call directory and they will not comply with my request. STOP CALLING ME!

**Homefix Custom Remodeling Response**                07/25/2022

We are so sorry for any inconvenience. We appreciate you bringing this to our attention and would like to ensure you are on our DNC list. If you feel comfortable doing so, please send the number being called to customercare@homefixcr.com.            [7]

"Last year © was getting 4 calls a week from fake numbers asking what project ''m next doing in my house. After a few months I set up an appointment just to find out what rat shit hole company hires Indian callers to harass homeowners, It is this company. The in person sales pitch was a bit cocky. The estimate was only verbal there was no write up. It was one of those decide now for a 35% discount or else. I said after 30-40 minutes ''d never hire a company that does that shady marketing. He said those guys are amazing and they keep him very busy. And said to tell them ''m renting and they will stop calling.  I recorded the meeting." [8]

---

[6] https://www.glassdoor.com/Reviews/Homefix-Custom-Remodeling-Reviews-E375203.htm?filter.iso3Language=eng

[7] https://www.bbb.org/us/md/columbia/profile/construction-services/homefix-custom-remodeling-0011-20000768/customer-reviews

[8] https://www.yelp.com/biz/homefix-custom-remodeling-vienna-3

"Robo call do not answer" [9]

•

"Unsolicited call"[10]

•

"calls too many times"[11]

•

"Terrible sales rep. called me with a bunch of false information. and then hung up on my said best of luck. stay far awa©.
If that was just the first interactio', I'd be scared to find out what happens after you already paid ©

• m..."[12]

"Keeps calling me every day despite the fac' I don't need work done. If their work is as bad as their market'ng you'd be better off setting your house on fire than going with Home

• fix'"[13]

"I'm on the DO NOT CALL LIST and they called trying to sell me something while I was at work. Very annoying. Not even sure how they got my num

• ber."[14]

24.     According to a Press Release by the Maryland Attorney General dated January 9,

2015, Homefix Corporation (as Homefix was previously known)[15] and its owner Tope Lala entered

into a settlement to resolve allegations that Homefix placed telemarketing calls to consumers who

asked to not be called on their home telephones or whose numbers were on the National Do Not

Call Registry.

---

[9] https://www.shouldianswer.com/phone-number/7034245218
[10] *Id.*
[11] https://www.shouldianswer.com/phone-number/4104011298
[12] https://www.google.com/search?q=Homefix+Custom+Remodeling+Vienna
[13] *Id.*
[14] *Id.*
[15] On January 15, 2015, Homefix Corporation changed its name to Homefix Custom Remodeling Corp.

25.     Allegedly, Homefix failed to take adequate steps to prevent calls to consumers who had registered their numbers on the Do Not Call Registry or who, after being contacted by Homefix, asked the company not to call them again. As a result, hundreds of consumers complained about receiving unwanted sales calls from Homefix. Some consumers reported that Homefix continued to call them, even after repeatedly being asked to stop.

26.     The Maryland Attorney General's settlement prohibited Homefix from calling consumers who are listed on the Do Not Call Registry or those who ask the company to not be called. It also required Homefix to improve its internal safeguards to prevent placing unwanted telemarketing calls, which included updating its technology and providing training for its employees. Homefix also agreed to pay $12,500 in penalties and costs.

## PLAINTIFF MIRANDA'S ALLEGATIONS

27.     Plaintiff Miranda's cell phone number ending xxx-xxx-6439 has been registered on the DNC since August 30, 2014.

28.     Plaintiff Miranda's cell phone number begins with a 954 Florida area code.

29.     Plaintiff Miranda uses his cell phone number for personal and residential purposes only.

30.     On June 5 or 6, 2022, a salesman knocked on Plaintiff's door and induced him to book an appointment for a home improvement consultation from Defendant Homefix. Plaintiff provided his phone number to the salesperson, but he did not fill out or sign any document.

31.     On June 6, 2022, Plaintiff Miranda called Defendant Homefix and cancelled the appointment, stating that he was not interested in getting a quote on windows. After this instance,

Plaintiff Miranda started receiving a series of solicitation calls to his cell phone from Defendant Homefix.

32.     Plaintiff Miranda answered several of Defendant's calls, and clearly requested Defendant Homefix to remove Plaintiff's phone number from their calling list. But despite making stop requests on multiple occasions, Plaintiff Miranda continued to receive solicitation calls from Defendant Homefix.

33.     Plaintiff Miranda has never conducted any business with Defendant Homefix, nor has he given his consent to receive telemarketing calls from or on behalf of Defendant Homefix.

34.     Defendant Homefix used spoofed phone numbers to call Plaintiff's cell phone. Plaintiff tried calling back some of the phone numbers to request Defendant to stop calling his cell phone, and found that the phone numbers that called him were not capable of receiving calls.

35.     Plaintiff Miranda received several calls on his cell phone from Defendant Homefix from the phone number 863-213-0483, which Plaintiff did not answer but which include:

- On June 14, 2022, at 12:28 PM,

- On June 15, 2022, at 11:59 AM,

- On June 16, 2022, at 1:16 AM, and

- On June 18, 2022, at 11:17 AM.

36.     On June 17, 2022, at 11:40 AM, Plaintiff Miranda received a call from the phone number 863-213-0483 to his cell phone. Plaintiff answered the call and spoke to Defendant Homefix's employee and requested them to remove his phone number from their calling list.

37.     On June 20, 2022, at 4:55 PM, Plaintiff Miranda received another call from Defendant Homefix using the same phone number 863-213-0483. Plaintiff did not answer this call and received a pre-recorded voicemail from Defendant's employee Sherry:

"Good afternoon. Sherry here at Homefix Custom Remodeling. I'm reaching out to get you scheduled for your free estimate on your window replacements. Give me a call back. My name again is Sherry at 863-213-0483. I'd love to be able to give away this free windows replacement estimate to you. It is of no obligation to you and is good for 12 full months. Can you imagine that? 12 full months to have a budgeting tool and something to save for. Give me a call again at 863-213-0483 to get scheduled as well as talk about discounts that I can get for you. Again call Sherry at Homefix Custom Remodeling. Have a great day now. Bye."

38.     On calling this phone number 863-213-0483, it is answered by Defendant Homefix's employees.

39.     Plaintiff Miranda never consented to receiving solicitation calls from Defendant Homefix and does not have any existing business relationship with the Defendant.

40.     The unauthorized telephone calls placed by Defendant, as alleged herein, have harmed Plaintiff Miranda in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

## PLAINTIFF MAUNEY'S ALLEGATIONS

41.     Plaintiff Mauney's cell phone number ending xxx-xxx-8634 has been registered on the DNC since August 1, 2011.

42.     Plaintiff Mauney uses her cell phone number for personal and residential purposes only.

43.     Plaintiff Mauney has never conducted any business with Defendant Homefix, nor has she given her consent to receive telemarketing calls from or on behalf of Defendant Homefix.

44.     Near the end of July, someone knocked on Plaintiff Mauney's door offering quotes to purchase new windows. Plaintiff Mauney told the employee that she was not interested and to take her off of whatever list he was working from. The employee argued that the client needs new windows.

45.     After this visit, Plaintiff Mauney started receiving a series of unsolicited calls to her cell phone number from local and foreign callers regarding a quote for windows. The callers identified as US Home Improvement, which is an alias used by Defendant Homefix to place telemarketing calls.

46.     On August 9, 2022, at 12:32 PM, Plaintiff Mauney received a call from Defendant Homefix to her cell phone from the phone number 919-881-5789. Plaintiff answered this call and a foreign caller identified as US Home Improvement, an alias used by Defendant Homefix. Plaintiff Mauney informed Defendant that she was on the Do Not Call list and asked Defendant to take her phone number off their calling list.

47.     On August 9, 2022, despite making a stop request to Defendant Homefix, Plaintiff Mauney received multiple calls from Defendant, including:

- On 2:29 PM using the phone number 919-847-8227,

- On 2:52 PM using the phone number 919-824-5276, and

- On 3:38 PM using the phone number 919-813-3584.

48.     On August 10, 2022, Plaintiff Mauney received more solicitation calls from Defendant Homefix using the alias US Home Improvement, including:

- On 10:39 AM using the phone number 919-856-9083,

- On 10:43 AM using the phone number 919-881-3959,

- On 11:16 AM using the phone number 919-826-6573, and

- On 4:10 PM using the phone number 919-885-1214.

49.     On August 13, 2022, Plaintiff Mauney received another call from Defendant Homefix using phone numbers 919-869-9140. Plaintiff answered the call and the caller again

identified as US Home Improvement. Plaintiff asked the caller for their company's location and the caller said they could not provide it.

50.    On August 16, 2022, Plaintiff Mauney received another call from Defendant Homefix. Plaintiff answered the call and spoke to Defendant's employee who identified the company as Defendant Homefix's alias, US Home Improvement and informed Plaintiff that their company was located in North Carolina. Plaintiff pressed the caller for more information about the company and the caller hung up.

51.    On August 17, 2022, Plaintiff Mauney received another call to her cell phone from Defendant Homefix using the phone number 919-824-6344. Plaintiff answered the call and spoke to another foreign caller who initially said he is with US Home Improvement. Plaintiff Mauney played along and the caller admitted that the company is Homefix when trying to establish a time and date for a free quote consultation. The client hung up before confirming.

52.    Right after the previous call ended, the same caller called back on Plaintiff Mauney's cell phone this time using the phone number 919-821-0575. The caller started by saying he is with Homefix. Plaintiff Mauney asked why the caller was using a different company name this time. The caller said that they are really Homefix and that they use the other company name, US Home Improvement, because it is easier. The agent then went on to ask when he could have employees come over and give a free consultation quote.

53.    Plaintiff asked where the company was located and Defendant's employee confirmed that they are located in Charlotte, Raleigh and other locations and have been in business for 31 years. Defendant's employee then asked when they could book the appointment.

54.     Plaintiff Mauney told Defendant's employee that she has asked many times for the calls to stop and that her phone number was on the Do Not Call Registry. Defendant's employee did not acknowledge Plaintiff's stop request and hung up.

55.     Plaintiff Mauney never consented to receiving solicitation calls from Defendant Homefix and does not have any existing business relationship with the Defendant.

### PLAINTIFF GONZALEZ'S ALLEGATIONS

56.     Plaintiff Gonzalez's telephone number, (757)-XXX-6139, is registered on the National Do Not Call Registry and has been continuously since November 12, 2005.

57.     The number is used for personal and household purposes.

58.     The number is not associated with a business.

59.     In early 2020, the Plaintiff received a door to door solicitation regarding home improvement services.

60.     The company that came to her door was *not* the Defendant.

61.     Ms. Gonzalez received the quote and rejected it because she did not think it was a reasonable offer.

62.     Since that time, Ms. Gonzales has not sought out any quotes or other information regarding any home improvement projects.

63.     Despite that, Ms. Gonzalez began to receive scripted telemarketing calls from the Defendant in approximately February of 2022.

64.     The scripted telemarketing calls promoted the Defendant's home improvement services.

65.     The Defendant wanted Ms. Gonzalez to get a quote for improvements that could be made to her home.

66.    Ms. Gonzalez made repeated requests to no longer receive these calls.

67.    Yet, the calls continued.

68.    After making numerous demands for the Defendant to stop calling, the Plaintiff's daughter posted a Google review at the Plaintiff's request after receiving another scripted telemarketing call.

69.    This review is below:

> NATURE OF DISPUTE: This company has spam solicited my mom's phone from multiple numbers. She has repeatedly made it clear to stop but they call again from a different local phone number.  Now reporting this company with the FTC because the unsolicited spam phone calls are both obnoxious and illegal. Stop spam calling people when they've repeatedly told you to stop.

70.    However, this did not cause the calls to stop either.

71.    Subsequent to posting the Google review, the Plaintiff got another scripted telemarketing calls from the Defendant.

72.    On April 18, 2022, the Plaintiff had her daughter write to the Defendant making another demand that the calls stop.

73.    That e-mail is below:



74.     However, that also did not stop the calls from coming.

75.     The Plaintiff then retained counsel and on December 5, 2022 her counsel sent the Defendant a request to stop calling the Plaintiff and notice of a potential lawsuit.

76.     Remarkably, the Plaintiff got *another* call on December 13, 2022 after this letter.

77.     The scripted telemarketing call was like the others, where the Defendant was seeking to provide a quote to sell its services.

78.     The Plaintiff did not provide her prior express written consent to Defendant to receive the calls.

## PLAINTIFF DRIBBEN ALLEGATIONS

79.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

80.    Plaintiff's cellular telephone number, (XXX) XXX-5743, is a non-commercial telephone number not associated with any business.

81.    Plaintiff's cellular telephone number, (XXX) XXX-5743, is used for personal, residential purposes.

82.    Plaintiff's telephone number, (XXX) XXX-5743, has been listed on the National Do Not Call Registry since 2008.

83.    Plaintiff has never been a Homefix customer and never consented to receive calls from Homefix.

84.    Plaintiff received three unsolicited telemarketing calls from Homefix on his cellular telephone, (XXX) XXX-5743, between October 29, 2020, to April 18, 2022.

85.    The first call from Homefix on October 28, 2020, was from telephone number (703) 646-8751.

86.    The caller identified themselves as "Eliza Green" from Homefix and began soliciting Homefix's home repair services, including offering a free estimate.

87.    At the time of the call, Plaintiff rented the property in which he was living.

88.    Plaintiff, in an attempt to get the calls to stop, agreed that Homefix could provide an estimate to replace windows.

89.    Homefix came to Plaintiff's rental property on November 2, 2020.

90.    During the visit, Plaintiff confirmed the identity of the unsolicited caller as Homefix.

91.    Plaintiff did not purchase Homefix's services or products, nor did he do any business with Homefix as a result of this interaction.

92.     Having confirmed the identity of the caller, Plaintiff subsequently filed a complaint with the Maryland Attorney General's Office over this unsolicited call and requested Homefix cease calling him.

93.     The Maryland Attorney General's Office provided a copy of Plaintiff's complaint to Homefix but Homefix refused to engage in the Maryland Attorney General's dispute resolution process.

94.     Nonetheless, Homefix continued to call Plaintiff.

95.     Plaintiff received a second unsolicited telemarketing call from Homefix on January 7, 2022, from telephone number (410) 832-5559.

96.     The number (410) 832-5559 is associated with Homefix. *See* https://www.whitepages.com/phone/1-410-832-5559 (last visited April 29, 2022).

97.     The caller identified himself as "Mike Anderson" and was calling to offer Plaintiff a free estimate for home repairs.

98.     Plaintiff, in an attempt to get the calls to stop, agreed that Homefix could provide an estimate for home repairs.

99.     Homefix came to Plaintiff's home on January 8, 2022.

100.    During the visit, Plaintiff confirmed the identity of the unsolicited caller as Homefix.

101.    Plaintiff did not purchase Homefix's services or products, nor did he do any business with Homefix as a result of this interaction.

102.    Plaintiff received a third unsolicited telemarketing call from Homefix on April 18, 2022, from telephone number (443) 517-3870.

103.    The caller identified themselves as a representative of Homefix and was again calling to offer Plaintiff a free estimate for home repairs.

104.    During this call, in an attempt to get the calls to stop, Plaintiff again agreed Homefix could provide an estimate.

105.    However, after this call, Homefix realized that Plaintiff was listed on its internal do not call list and never provided an estimate.

106.    Each of the above-described calls occurred after Plaintiff had registered his residential telephone number with the National Do Not Call Registry.

107.    Plaintiff and other individuals who received these telephone solicitation calls suffered an invasion of privacy and were harassed by the conduct of Defendant.

## CLASS ACTION ALLEGATIONS

108.    Plaintiffs brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**TCPA Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of Defendant, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiffs

**TCPA Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time, (2) within any 12-month period, (3) for substantially the same reason that Defendant called Plaintiffs (4) including at least once after the person requested that Defendant or its agent to stop.

**TCPA Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant, or an agent calling on behalf of the Defendant, called on their cellular telephone number (2) using the same or a substantially similar artificial or pre-recorded voice message used to call Plaintiff Miranda.

**FTSA Pre-recorded No Consent Class:** All persons in Florida, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendant's goods and/or services, (2)

using the same or a substantially similar artificial or pre-recorded voice message used to call Plaintiff Miranda.

**FTSA Spoofed Number Class:** All persons in Florida, who (1) received an unwanted telephonic sales call from or on behalf of the Defendant, (2) using a phone number which the recipients of the call were unable to call back, or (3) on calling those number back, the recipients were unable to reach the Defendant or their agents.

**Virginia Telephone Privacy Protection Act Do Not Call Registry Class:** All persons in Virginia or with a Virginia area code, who, (1) received a telephonic sales call from HomeFix and/or a third party acting on HomeFix's behalf regarding goods or services, (2) to a number on the National Do Not Call Registry (3) from the four years prior to the filing of the complaint through the date of trial (4) for substantially the same reason Defendant called Plaintiff Gonzalez.

109.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the Class definitions following appropriate discovery.

110.    **Typicality and Numerosity**: Plaintiffs are members of the TCPA Do Not Call Registry Class and TCPA Internal Do Not Call Class. Plaintiff Miranda is a member of the TCPA Pre-recorded No Consent Class and all the Florida Classes, Plaintiff Gonzalez is a member of the Virginia Telephone Privacy Protection Act Do Not Call Registry Class and on information and belief, there are hundreds, if not thousands of members of the Classes, all of which received calls from Defendant as part of a single telemarketing campaign, and joinder of all members is impracticable.

111.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    whether Defendant or an agent calling on behalf of Defendant placed multiple calls within a 12-month period to Plaintiffs and other consumers whose telephone numbers were registered with the National DNC for at least 30 days at the time of each call;

    (b)    whether Defendant or an agent calling on behalf of Defendant placed calls to Plaintiffs and other members of the TCPA Internal Do Not Call Class including at least 1 call after the person requested Defendant or their agent to stop calling their phone;

    (c)    whether Defendant used a pre-recorded voice message to call Plaintiff Miranda and members of the TCPA Pre-recorded No Consent Class and the FTSA Pre-recorded No Consent Class;

    (d)    whether Defendant used spoofed phone numbers to call Plaintiff Miranda and other members of the FTSA Spoofed Number Class;

    (e)    whether Defendant made telemarketing calls without first obtaining prior express written consent;

    (f)    whether the calls violated the TCPA, VTPPA and the FTSA;

    (g)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

112.    **Adequate Representation**: Plaintiff Miranda and Plaintiff Mauney will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

113.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff Miranda or Plaintiff Mauney. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

<u>**FIRST CLAIM FOR RELIEF**</u>
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the TCPA Do Not Call Registry Class)**

114.    Plaintiffs repeat and reallege the prior paragraphs of this Complaint and incorporate them by reference herein.

115.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

116.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

117.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the TCPA Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

118.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the TCPA Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

119.     As a result of Defendant's conduct as alleged herein, Plaintiffs and the TCPA Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for each of such violations of 47 C.F.R. § 64.1200.

120.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the TCPA Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the TCPA Internal Do Not Call Class)**

121.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint and incorporate them by reference herein.

122.    Plaintiffs brings this claim individually and on behalf of the TCPA Internal Do Not Call Class Members against Defendant.

123.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the sub'criber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential sub'criber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose

behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a c'nsumer's prior express permission to share or forward the c'nsumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential sub'criber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a c'nsumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

124.    Defendant, or an agent calling on behalf of Defendant placed calls to Plaintiffs and members of the TCPA Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

125.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

126.    The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiffs and the other members of the TCPA Internal Do Not Call Class are each entitled to up to $1,500 per violation

### THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Miranda and the TCPA Pre-recorded No Consent Class)**

127.    Plaintiff Miranda repeats and realleges the foregoing paragraphs of this Complaint and incorporates them by reference herein.

128.    Plaintiff Miranda brings this claim individually and on behalf of the TCPA Pre-recorded No Consent Class Members against the Defendant.

129.    Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff Miranda and the other members of the TCPA Pre-recorded No Consent Class using a pre-recorded voice message.

130.    These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Miranda and the other members of the TCPA Pre-recorded No Consent Class.

131.    The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Miranda and the other members of the TCPA Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### FOURTH CLAIM FOR RELIEF
**Florida Telephone Solicitation Act**
**(Violation of Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Miranda and the FTSA Pre-recorded No Consent Class)**

132.    Plaintiff Miranda repeats and realleges the foregoing paragraphs of this Complaint and incorporates them by reference herein.

133.    Plaintiff Miranda brings this claim individually and on behalf of the FTSA Pre-recorded No Consent Class Members against Defendant.

134.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

135.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

136.    Defendant failed to secure prior express written consent from Plaintiff Miranda and members of the FTSA Pre-recorded No Consent Class.

137.    In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff Miranda and the FTSA Pre-recorded No Consent Class members without Plaintiff Miranda's and the Class members' prior express written consent.

138.    Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff Miranda and the Class members to be made utilizing an automated system using a prerecorded message.

139.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Miranda and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## FIFTH CLAIM FOR RELIEF
### Florida Telephone Solicitation Act
### (Violation of Fla. Stat. § 501.059)
### (On Behalf of Plaintiff Miranda and the FTSA Spoofed Number Class)

140.    Plaintiff Miranda repeats and realleges the foregoing paragraphs of this Complaint and incorporates them by reference herein.

141.    Plaintiff Miranda brings this claim individually and on behalf of the FTSA Spoofed Number Class Members against Defendant.

142.    It is a violation of the FTSA "for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone so'icitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. However, it is not a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the'seller's customer service telephone number, which is answered during regular business hours. If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. For purposes of this section, th" term "caller identification "ervice" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed on a device in or connected to the sub'criber's telephone." *Fla. Stat. § 501.059(8)(b).*

143.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services,

soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." *Fla. Stat. § 501.059(1)(i).*

144.    Defendant failed to ensure that the phone number which was displayed in the caller identification service for the telephonic sales calls made by them to the Plaintiff Miranda and other members of the Class were capable of receiving phone calls if the Plaintiff tried to call them back. Plaintiff Miranda was unable to connect with the Defendant upon calling the phone numbers which were displayed on their cell phone's caller identification system for the telephonic sales call received from Defendant.

145.    In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff Miranda and the FTSA Spoofed Number Class members using phone numbers which could not be called back, or spoofed phone numbers.

146.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Miranda and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff Miranda and the members of the FTSA Spoofed Number Class are also entitled to an injunction against future calls. *Id.*

## SIXTH CLAIM FOR RELIEF
**Violation of the Virginia Telephone Privacy Protection Act,
Va. Stat. § 59.1-514
On Behalf of Plaintiff Gonzalez and the Virginia Telephone Privacy Protection
Act National Do Not Registry Call Class**

147.    Plaintiff Gonzalez repeats and incorporates the allegations set forth in the prior paragraphs as if fully set forth herein.

148.    Plaintiff Gonzalez brings this claim individually and on behalf of the Virginia Telephone Privacy Protection Act National Do Not Call Registry Class Members against Defendant.

149.    It is a violation of the VTPPA to "initiate, or cause to be initiated, a telephone solicitation call to a telephone number on the National Do Not Call Registry …." Va. Stat. § 59.1-514(B).

150.    A "telephone solicitation call" is a call made "for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment …." *Id* at § 59.1-510.

151.    Defendant failed to secure prior express written consent from Plaintiff Gonzalez and the Class Members.

152.    In violation of the VTPPA, Defendant's agent made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Classes members' prior express written consent even though the Class members were on the National Do Not Call Registry.

153.    As a result of Defendant's conduct, and pursuant to § 59.1-515 of the VTPPA, Plaintiff and Classes members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Classes members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Miranda and Mauney individually and on behalf of the Classes, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Classes, as defined above; appointing Plaintiffs as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA, VTPPA and the FTSA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request a jury trial.

Respectfully Submitted,

**ROBIN ARIEL MIRANDA**, **DOUGLAS DRIBBEN, MARY MAUNEY**, and **MARY JEANNE MAUNEY,** individually, and on behalf of those similarly situated individuals

DATED this 8th day of December, 2023.

By: /s/ John McGowan
Managing Member
Kinner & McGowan, PLLC
413 East Capitol St. SE
Washington, D.C. 20003
(202) 846-7148
jmcgowan@kinnermcgowan.com
kinnermcgowan.com

*Local Counsel for Plaintiffs and the putative Classes*

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA
Telephone: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

Avi R. Kaufman, Esq.
**KAUFMAN P.A**
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
kaufman@kaufmanpa.com
(305) 469-5881

*Attorneys for Plaintiffs and the putative Classes*